# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-1301V
Filed: January 27, 2021
(Not to be published)

| | | |
|---|---|---|
| JOYCE POPWELL, | * | |
| Petitioner, | * | Findings of Fact; Onset; Shoulder |
| | * | Injury; Covered Vaccine. |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |

Louis P. McFadden, Louis P. McFadden, Jr., Northfield, NJ, for Petitioner
Mark K. Hellie, U.S. Department of Justice, Washington, DC, for Respondent

## RULING ON ONSET[1]

**Oler**, Special Master:

On September 21, 2017, Joyce Popwell ("Ms. Popwell" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"). The petition alleges that the "pneumococcal 23-valent

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** However, the parties may object to the Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

(influenza)" [sic] vaccination Ms. Popwell received on September 24, 2015 caused her to suffer "bursitis of her left shoulder [and] a low-grade partial anterior supraspinatus tear." Pet. at 1. Petitioner filed an amended petition January 4, 2018 to clarify "that it is the seasonal influenza vaccination shot that Petitioner received on that date in her left shoulder that forms the basis for this Petition." Amended Pet. at 1.

After carefully considering the evidence presented in this case, to include the medical records and affidavits, I find that Petitioner's left shoulder pain began on September 24, 2015, the date of her vaccination. I further find that there is preponderant evidence that her left shoulder injuries resulted from the influenza vaccination administered in her left arm on September 24, 2015 and not from the adult pneumococcal vaccination administered on the same day in the same arm.

## I.      Procedural History

Petitioner filed her Petition on September 21, 2017. Pet., ECF No. 1. On September 29, 2017, Petitioner filed supporting medical records (Exs. 1-4) and her first affidavit (Ex. 5). ECF No. 6.

On January 4, 2018, Petitioner filed an amended petition clarifying that "it is the seasonal influenza vaccination shot that Petitioner received…that forms the basis for [the instant Petition]". Am. Pet. at 1, ECF No. 11. On the same date, Petitioner also filed a second affidavit, clarifying typographical errors in her first affidavit. Ex. 6, ECF No. 12. On February 20, 2018, Petitioner filed several additional medical records. Exs. 7-16, ECF No. 14. Petitioner filed additional medical records via compact disc on May 10, 2018. ECF No. 26. On the same day, Petitioner filed her statement of completion. ECF No. 28.

Respondent filed his Rule 4(c) report on August 30, 2018. Resp.'s Rept. ECF No. 34. Respondent argued that this Petition is not appropriate for compensation and that Petitioner "has not demonstrated…that the onset of her pain began within 48 hours of the vaccinations. *Id.* at 9.

This case was transferred to me on September 7, 2018. ECF No. 36. Petitioner filed supplemental medical records and a third affidavit on September 10, 2019. ECF No. 42. On October 25, 2019, the parties filed a joint status report indicating that they would be amenable to a ruling on the record on the issues of 1) which vaccine caused Petitioner's claimed injuries; and 2) onset. The parties filed their respective briefs in support of their positions on January 27, 2020. ECF Nos. 47 and 48. This case is now ripe for a fact ruling.

## II.     Petitioner's Medical Records that Pertain to the Issue of Onset

Petitioner was born in 1944. Ex. 1. On September 24, 2015, Petitioner presented to the Emergency Department at AtlantiCare Regional Medical Center ("Atlanticare"), complaining of chest pain and shortness of breath. Ex. 2 at 63. Petitioner also presented with elevated blood pressure and elevated heart rate. *Id.* A full review of systems was conducted at this visit. Petitioner's musculoskeletal exam at 12:54 AM revealed back pain, muscle pain, and joint pain.

*Id.* at 63.  A second physical exam, conducted at approximately 12:59 AM revealed Petitioner to have a "normal range of motion" and "normal strength."  *Id.* at 81.

At 5:14 AM, Petitioner received two vaccines: the seasonal influenza virus vaccine and the pneumococcal 23-polyvalent (PPSV-23) vaccine.  Ex. 17 at 4501, 4502.  Both shots were administered into Petitioner's left arm.  *Id.*  Petitioner appears to have received the influenza vaccination first, at 5:14:04 AM.  *Id.* at 4568.  The PPSV-23 vaccine was administered at 5:14:08 AM.  *Id.* at 4569.  Although Petitioner recalls telling the attending nurse that she "was experiencing pain in [her] left shoulder where [she] received the vaccine," no such notation is found in the medical records.  Ex. 5 at 6.

On October 9, 2015, Petitioner was seen by her primary care doctor, Dr. Manolito Cadacio, for a follow up visit following an allergic reaction.  Ex. 3 at 2.  At this visit, Dr. Cadacio noted that Petitioner "had a flu shot and pneumonia vaccine on her left arm on 9/24/15.  She still has discomfort on her left upper arm.  She has been applying ice packs PRN."  *Id.*  Upon examination, Petitioner's left upper arm was found to have "no swelling or erythema" but did present with "mild tenderness."  *Id.*  Dr. Cadacio noted that the pain in Petitioner's upper arm was "most likely due [to the] flu shot."  *Id.*

On December 21, 2015, Petitioner was seen by Dr. Matthew Pepe for an examination of her left shoulder.  Dr. Pepe noted that Petitioner had been having "left shoulder pain since early September.  She states she has received flu and pneumococcal vaccine in the left shoulder and is having extreme pain" as well as "difficulty with range of motion…."  Ex. 4 at 11.  Petitioner was diagnosed with right shoulder pain and left shoulder bursitis.  *Id.*

On February 8, 2016, Petitioner again presented to Dr. Pepe "with numbness and tingling" in her left shoulder "since September" 2015.  Ex. 4 at 9.  Dr. Pepe diagnosed Petitioner with "possible postinjection frozen shoulder."  *Id.*

On October 23, 2017, Petitioner was seen by Dr. Thomas Dwyer for her shoulder pain.  Dr. Dwyer noted that Petitioner stated that "her left shoulder has been bothering her for about 2 years after receiving a flu and pneumonia injection."  Ex. 13 at 6.  Dr. Dwyer further stated that Petitioner's shoulder pain started "after some flu shots earlier this year."[3]  Ex. 13 at 8.

### III.   The Petition, Affidavits, and Documentary Evidence

The Petition filed in this matter states that Petitioner experienced left shoulder injuries following her September 24, 2015 flu vaccination.  Amended Pet. at 1.

#### A.  Affidavits

##### 1.  Petitioner's First Affidavit

---

[3] It appears Dr. Dwyer's reference to flu shots "earlier this year" is in error when considered in conjunction with the earlier notation in the same record that Petitioner's "left shoulder has been bothering her for about 2 years after receiving a flu and pneumonia injection."  Ex. 13 at 6.

In her initial affidavit, Petitioner stated "on or about September 24, 2017,[4] at approximately 5:14a.m., [she] received "a pneumococcal 23-valent (influenza) vaccination.[5]  Ex. 5 at 2, ECF No. 6.  Prior to the administration of this vaccine, Petitioner testified that she "suffered no medical conditions with respect to musculoskeletal weakness in [her] shoulder."  *Id.*

Petitioner reported that she experienced "musculoskeletal weakness" approximately one hour after vaccination.  Ex. 5 at 7.  That same day, Petitioner stated that she made an appointment with her family physician (Dr. Cadacio) for October 9, 2015.  *Id.*  Petitioner was seen by her family physician on October 9, 2015 for "pain and discomfort in [her] upper left extremity, and a limited range of motion in [her] left shoulder."  *Id.*  Petitioner stated that she was referred to Dr. Matthew Pepe for physical therapy.  *Id.*  On December 21, 2015, Dr. Pepe diagnosed Petitioner with "possible bursitis" of her left shoulder as a result of her September 24, 2015 vaccination.  Petitioner was again seen by Dr. Pepe on February 8, 2016, when she was diagnosed with "post-injection frozen shoulder."  *Id.*

Petitioner stated that she continues to suffer from various symptoms related to her injury, including weakness in her hand, numbness and tingling, and limited range of motion.  Ex. 5 at 7.  Petitioner further stated that her injuries were "caused-in-fact by the September 24, 2015 pneumococcal 23-valent (influenza) vaccination [she] received."  *Id.* at 7-8.  Petitioner stated that these symptoms have persisted for more than 21 months.  *Id.* at 8.

### 2. Petitioner's Second Affidavit

Petitioner filed a second affidavit on January 4, 2018.  Petitioner stated that her first affidavit contained two typographical errors.  Ex. 6 at 1.  Petitioner noted that in her first affidavit, the "date of the subject vaccination was referred to as occurring in 2017, instead of 2015."  *Id.*  Petitioner also stated that she wished to "clarify that it is the seasonal influenza vaccination shot that [she] received on that date in [her] left shoulder that forms the basis for [the] Petition."  *Id.*

The remainder of Petitioner's second affidavit is the same as her first.

### 3. Petitioner's Third Affidavit

Petitioner filed a third affidavit on May 21, 2019.  Ex. 21, ECF No. 42.  Petitioner stated that she received two vaccinations at Atlanticare Medical Center on September 24, 2015, while she was an inpatient.  *Id.* at 1.  Petitioner stated that the vaccine she received was "administered by a nurse who woke [her] up around 5:00 AM saying she had a flu shot.  Gave me the flu vaccine in [my] left arm, near top of my left shoulder area.  Immediately felt severe pain at the site."  *Id.*  Petitioner stated that she immediately expressed to the nurse how bad the pain was.  *Id.*  Petitioner stated that she received the PPSV-23 vaccine "several minutes later."  *Id.*

---

[4] Petitioner received the vaccines on September 24, 2015.  This is corrected in her second affidavit.

[5] It appears that Petitioner's affidavit confuses the PPSV-23 vaccine with the influenza vaccine.  Petitioner received both the PPSV-23 and the influenza vaccines on September 24, 2015.  Ex. 2 at 277.  This error occurs both times Petitioner refers to her vaccine in the affidavit.  This error is also corrected in Petitioner's second affidavit.  Ex. 6 at 1.

4

### IV. Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006). Medical records created contemporaneously with the events they describe are presumed to be accurate and complete. *Doe/70 v. Sec'y of Health & Hum. Servs.*, 95 Fed. Cl. 598, 608 (2010).

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992)(citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")). "Written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later." *Reusser v. Sec'y of Health & Hum. Servs.*, 28 Fed. Cl. 516, 523 (1993).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him;

5

(3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993).

### V.     Findings of Fact

The issues to be addressed are 1) when Petitioner's symptoms of left shoulder pain began, and 2) whether Petitioner's pain was caused by the flu vaccine, or by the uncovered adult pneumococcal vaccine. Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a preponderance of the evidence. § 300aa-12(a)(1)(A). Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring). In light of the medical records and affidavits presented in this case, and after my careful examination of the record as a whole, I find there is preponderant evidence that the onset of Petitioner's symptoms of left shoulder pain began on September 24, 2015, the day of vaccination. I further find that there is preponderant evidence that Petitioner's pain was caused by her flu vaccine.

In her affidavits, Petitioner attests that she experienced pain immediately after receiving her first vaccination. I find her statement on this point to be credible because it is corroborated by her medical records.

#### A.  Onset of Pain

While none of the medical records prepared during Petitioner's hospitalization indicate that her left upper arm pain began while she was in the hospital, Petitioner reported that she experienced an immediate onset of pain to Dr. Cadacio during her visit with him on October 9, 2015, 15 days after vaccination. This record indicates, "She had a flu shot and pneumonia vaccine on her left arm on 9/24/15. She still has discomfort on her left upper arm." Ex. 2 at 377.

Petitioner consistently attributed her left shoulder pain to vaccination. *See* Ex. 4 at 9 (December 21, 2015 visit with Dr. Pepe where Petitioner described "left shoulder pain since early September" after receipt of the flu and pneumococcal vaccines); Ex. 4 at 11 (February 8, 2016 visit with Dr. Pepe where Petitioner described left shoulder pain "with numbness and tingling since September"); Ex. 13 at 6 (October 23, 2017 visit with Dr. Dwyer where Petitioner stated that "her left shoulder has been bothering her for about 2 years after receiving a flu and pneumonia injection."). Based on these records, I find that Petitioner experienced left shoulder pain on September 24, 2015, the date of vaccination.

#### B.  Causal Vaccine

The issue regarding which vaccine is causal is a close one. The medical records show the

flu vaccine was given first, at 5:14:04 AM.[6] Ex. 17 at 4568. This is consistent with Petitioner's third affidavit where she states that the flu vaccine was administered before the PPSV-23 vaccine. Petitioner additionally indicates that she experienced immediate pain after the first shot. Further, Petitioner's doctor, Dr. Cadacio examined her on October 9 for left upper arm pain. He assessed Petitioner with "pain in upper limb" and indicated that it was "most likely due [to the] flu shot." Ex. 3 at 2. Although Dr. Cadacio did not state why he attributed Petitioner's left upper arm pain to her flu vaccination and not the adult pneumococcal vaccination (or both vaccinations), he nonetheless did specifically attribute her pain to the flu shot. This medical record corroborates Petitioner's third affidavit, wherein she claims that the flu vaccine caused her pain. I find this notation is sufficient to tip the scales in Petitioner's favor. I find she has preponderantly established that her flu vaccine caused her left upper arm pain.

### VI. Conclusion

I find that the affidavits submitted by and on behalf of Petitioner along with the medical records work in concert to provide preponderant evidence that Petitioner's left shoulder pain began on September 24, 2015 and that the flu vaccine caused her pain.

The following is therefore ORDERED:

By no later than **Monday March 1, 2021**, Petitioner and Respondent shall file a joint status report updating me on their proposed next steps in the case based on the facts articulated in this ruling.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[6] The fact that the medical records also list the flu vaccine first in terms of its appearance in these records also suggests that it was administered before the PPSV-23 vaccine. *See* Ex. 17 at 4568-69; Ex. 2 at 170-71.